**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPOMNI, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. _____ ) |
| RECOLABS INC. d/b/a RECO a.k.a. RECO.AI, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendant. | ) ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff AppOmni, Inc. ("Plaintiff" or "AppOmni") brings this action for patent infringement against Defendant RecoLabs Inc. d/b/a Reco a.k.a. Reco.ai ("Defendant" or "Reco") as follows:

**NATURE OF THIS ACTION**

1. This is an action for infringement of U.S. Patent Nos. 11,044,256 (the "'256 Patent"), 11,418,393 (the "'393 Patent"), and 11,870,783 (the "'783 Patent") (collectively, the "Asserted Patents") arising under the patent laws of the United States, Title 35, United States Code §§ 1, *et seq.*, including 35 U.S.C. § 271.

2. AppOmni is a pioneer in Software-as-a-Service ("SaaS") security posture management ("SSPM"). Founded in 2018, AppOmni provides software that empowers organizations to secure and govern their SaaS applications, giving AppOmni's customers clear insight into who can access their data and how that data is being used across their environment and ensuring compliance with data-security best practices. Despite its relative youth, AppOmni has already received widespread acclaim for its groundbreaking technology, including being named a PURE CYBER 100 "Companies to Watch in 2023" and one of CyberTech 100's Companies for 2022, as well as a Dark Reading Cyber Security Vendor to Watch and a SINET16 Innovator.

3.      AppOmni has achieved such recognition by developing its proprietary system for continuously monitoring and managing enterprise SaaS security, which enables organizations to implement consistent security policies across the enterprise through a unified interface, monitoring compliance with those policies and any deviations over time, and establishing data-access rules and permissions, all while maintaining compatibility with major enterprise SaaS platforms. AppOmni has invested extensively in researching and developing its proprietary SaaS security platform, and received substantial investments from leading venture firms Cisco Investments, Salesforce Ventures, ServiceNow Ventures, Scale Venture Partners, and others.

4.      On information and belief, Reco was founded in 2020 by Ofer Klein, Tal Sharipa, and Gal Nakash to develop and launch a SaaS security platform. Reco's SaaS security posture management platform and services ("Accused Products") infringe AppOmni's patents.

5.      AppOmni has filed this lawsuit to stop Reco's unlawful infringement of AppOmni's patented innovations, and to obtain damages, an injunction, and other relief.

## THE PARTIES

6.      AppOmni is a Delaware corporation with its principal place of business at 3 East Third Avenue, Suite 200 San Mateo, CA 94401.

7.      On information and belief, Reco is a Delaware corporation with its principal place of business at 235 N. Westmonte Dr., Altamonte Springs, FL 32714.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction over AppOmni's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Reco because Reco is incorporated in the State of Delaware.

10. Venue is proper in this judicial District under 28 U.S.C. § 1400(b) because Reco is incorporated in, and therefore resides in, the State of Delaware.

## BACKGROUND

A. **AppOmni's SaaS Security Posture Management Platform**

11. Software as a Service ("SaaS") platforms have become fundamental to modern enterprise operations. Whereas historically complex software applications needed to be stored and run on-premises, SaaS applications allow businesses to access all kinds of software applications through user interfaces over a network without storing data locally. Enterprise organizations often rely on SaaS applications for critical business functions including customer relationship management, human resources, financial management, business operations, data analytics, and others.

12. While SaaS platforms provide significant benefits, they also create complex security challenges. With many enterprises using dozens or even hundreds of different SaaS applications, which are often interconnected and sharing data, a single point of failure of security can produce devastating downstream effects on the entire organization, such as data breaches, reputation damage, data leakage, legal liability, or data loss.

13. For example, because SaaS platforms are decentralized, easy to activate and inexpensive, it can create a "shadow IT" problem where individual employees may engage SaaS providers within the broader organization or misconfigure settings without going through official approval channels. This can create inconsistencies across companies' IT environments or break compliance with data security practices or requirements.

14. Keeping access control, storage policies, disaster recovery policies, and other configurations consistent across many SaaS platforms is also a significant challenge. The rapid

pace of updates or changes to a company's various SaaS applications means that security configurations that were once correct can "drift" over time, creating new vulnerabilities.

15. AppOmni recognized that complex problems require advanced solutions. To address these problems, AppOmni developed its comprehensive SaaS Security Posture Management ("SSPM") platform, which empowers businesses to monitor, assess, and control their complex cloud security environments.

16. AppOmni's innovative SSPM platform enables businesses of all sizes to centrally control the configuration, monitoring, and control of SaaS applications in their organizations. For example, AppOmni's platform enables users to monitor SaaS applications, configure those applications, discover SaaS-to-SaaS connections, detect security threats, gain insight into risks and misconfigurations across the monitored services, view and manage SaaS security policy from a central point of control, and use an array of compliance, analytics, and reporting functionality, all while integrating with over 40 different SaaS applications.

17. AppOmni's platform includes its innovative and proprietary Deep Posture Inspection technology, which scans SaaS APIs, security controls, and configuration settings to understand an organization's SaaS security landscape and enable visibility into whether its SaaS security environment is in compliance with policy.

18. AppOmni has been recognized for its innovation in the SaaS security space. For example, in 2023 and 2024, AppOmni was recognized as a "Stellar Security Startup" by CRN. In 2023, AppOmni was named Frost & Sullivan's "Company of the Year" for Global SSPM (SaaS Security Posture Management), was recognized by Fortune Cyber60 as one of the fastest-growing cybersecurity startups, was named a "Strong Performer" in *The Forrester Wave: SaaS Security*

*Posture Management*, and was identified as one of the top hundred "Most Promising Companies in Cloud Infrastructure" in the RedPoint Ventures InfraRed100 list.

19.  AppOmni is proud of its history of successfully helping its customers to improve their SaaS security and more effectively prevent threats, gain insights, and ensure policy compliance. Four of the Fortune 10 and a quarter of the Fortune 100 companies use AppOmni to secure their SaaS environments.

**B.  The AppOmni Asserted Patents**

20.  AppOmni has been granted patents for its innovations in SaaS security systems, including the '256 Patent, the '393 Patent, and the '783 Patent.

**1.  U.S. Patent Nos. 11,044,256 and 11,870,783**

21.  The '256 Patent is titled "Classification Management" and was duly and legally issued by the USPTO on June 22, 2021. AppOmni is the assignee and owner of all right, title, and interest in and to the '256 Patent, including the right to enforce it and seek damages for infringement. A true and correct copy of the '256 Patent is attached as **Exhibit A**.

22.  The '783 Patent is a continuation of U.S. Application No. 17/130,484, which issued as the '256 Patent. The '783 Patent is titled "Classification Management" and was duly and legally issued by the USPTO on January 9, 2024. AppOmni is the assignee and owner of all right, title, and interest in and to the '783 Patent, including the right to enforce it and seek damages for infringement. A true and correct copy of the '783 Patent is attached as **Exhibit B**.

23.  The '256 Patent and '783 Patent generally disclose and claim systems and methods for managing elements within a SaaS environment wherein the elements are mapped to classifications including prescribed security attributes, and discrepancies between the prescribed security attributes and the current configuration are obtained and output. For example, in one example use case described in the specification, the disclosed inventive classification management

system can be used to "facilitate access attestations in an organization (e.g., enterprise)," whereby "a manager [of a subordinate] can leverage the mappings corresponding to a configured of classifications to easily identify the classification(s) that are relevant to a subordinate's accesses," and "determine stored mappings to classifications in a set that include elements to which [the subordinate] has access." '256 Patent at 22:11-31; '783 Patent at 22:20-40. In another disclosed example, "a regulator or another actor that is auditing an organization's set of events that has occurred at one or more data sources can query the classification management server to obtain those elements (which include events that have occurred) that map to an input classification of a set of classifications that is managed by the classification management server." '256 Patent at 22:47-53; '783 Patent at 22:56-62. The "classification management server can process the query by looking up the mappings stored for the input classifications and determine the elements (e.g., those that comprise occurred events) that are included in the mappings." '256 Patent at 22:53-57; '783 Patent at 22:62-66.

24. Independent claim 1 of the '256 Patent recites:

1. A system, comprising:

    a processor configured to:

        obtain, via a user interface, mappings of stored elements to a plurality of classifications, wherein the mappings include prescribed security attributes corresponding to the plurality of classifications;

        obtain, via the user interface, a policy that includes identifying information associated with a set of actors and a specified at least portion of the plurality of classifications;

        compare a set of configured security attributes associated with the set of actors to at least a portion of the prescribed security attributes corresponding to the specified at least portion of the plurality of classifications; and

6

        output information pertaining to a set of discrepancies determined based at least in part on the comparison; and

    a memory coupled to the processor and configured to provide the processor with instructions.

25. Independent claim 1 of the '783 Patent recites:

1. A system, comprising:

    a processor configured to:

        receive an indication to perform an audit corresponding to a policy, wherein:

            the policy includes identifying information associated with a set of actors and a specified at least portion of a plurality of classifications; and

            the plurality of classifications comprises mappings between stored elements and prescribed security attributes;

        perform the audit corresponding to the policy, comprising to compare a set of obtained security attributes associated with the set of actors to a portion of the prescribed security attributes corresponding to the specified at least portion of the plurality of classifications; and

        output information pertaining to a set of discrepancies determined based at least in part on the comparison; and

    a memory coupled to the processor and configured to provide the processor with instructions.

### 2.    U.S. Patent No. 11,418,393

26. The '393 Patent is titled "Remediation of Detected Configuration Violations" and was duly and legally issued by the USPTO on August 16, 2022. AppOmni is the assignee and owner of all right, title, and interest in and to the '393 Patent, including the right to enforce it and seek damages for infringement. A true and correct copy of the '393 Patent is attached as **Exhibit C**.

27. The '393 Patent generally discloses and claims systems and methods for detecting violations associated with security policy configurations by receiving an indication to perform an audit with respect to a policy, obtaining stored mappings corresponding to the policy, querying a data source server for configured security attributes, comparing the configured security attributes with prescribed security attributes, providing remediations corresponding to the violation when a violation of the security attributes exists, and storing an audit log that includes events associated with the remediation. For example, the specification explains that an organization's security policy may be "defined by an administrative user associated with the organization to include a set of mappings to elements stored at one or more data source servers, a set of prescribed configurations (e.g., security settings), and a selected set of actors." '393 Patent at 4:1-5. As the '393 Patent explains, an audit or "scan" may be performed with respect to a policy, whereby "the actual, proposed, theoretical, extracted, partial, or simulated configured security attributes corresponding to the SaaS platform elements related to the mapping(s) specified in the policy for the set of actors specified in the policy" can be compared against the prescribed security attributes associated with the policy. *Id.* at 4:30-38. The '393 Patent also discloses that "[a]ny discrepancies between those actual configured security attributes and the prescribed security attributes based on the policy type can be determined by remediation server 108 as configuration related violations for the organizations," and any such discrepancies "shine a light on possible security or functional risks that warrant the organization's attention or functional deficiencies that may cause denial of service, test failure, or inability for the actor(s) to perform their required business processes or operations." *Id.* at 4:38-51.

28. Independent claim 1 of the '393 Patent recites:

    1. A system, comprising:

        a processor configured to:

>> detect a violation associated with a configuration at a data source server, wherein to detect the violation associated with the configuration at the data source server comprises to:
>>
>>> receive an indication to perform an audit with respect to a policy;
>>>
>>> obtain stored mappings corresponding to the policy:
>>>
>>> query the data source server for configured security attributes of elements associated with the data source server with respect to a role group of the policy using the stored mappings:
>>>
>>> obtain prescribed security attributes corresponding to the stored mappings:
>>>
>>> compare the configured security attributes and the prescribed security attributes corresponding to the stored mappings based at least in part on a policy type and the role group of the policy;
>>>
>>> determine that the violation exists based at least in part on the comparison between the configured security attributes and the prescribed security attributes;
>>
>> provide a remediation corresponding to the violation; and
>>
>> store an audit log that includes one or more events associated with the remediation corresponding to the violation; and
>
> a memory coupled to the processor and configured to provide the processor with instructions.

**C.    Reco's Knowledge of the Asserted Patents and Its Infringement**

29.    Reco has known of the Asserted Patents since at least as early as December 16, 2024.

30.    On December 16, 2024, Kevin Johnson, outside counsel for AppOmni, sent a letter to Reco CEO Ofer Klein via email, in which Mr. Johnson identified the Asserted Patents. The letter notified Reco that Reco's SSPM platform infringes the Asserted Patents.

31. Copies of the Asserted Patents were attached to the December 16, 2024 letter from Mr. Johnson.

32. Not having received a response to the December 16, 2024 letter, counsel for AppOmni sent another letter to Reco on January 13, 2025, notifying Reco that it was publishing false and misleading advertisements concerning AppOmni's SaaS security management platform, including on Reco's website. The letter also referenced the earlier December 16, 2024 letter, requested that Reco cease and desist from continuing to infringe the Asserted Patents, and requested that Reco respond to the letter no later than January 20, 2025.

33. Counsel for Reco responded to the December 16, 2024 and January 13, 2025 letters on February 4, 2025. On or after February 4, 2025, Reco took down the web pages containing the statements that AppOmni had asserted were false and misleading in the January 13, 2025 letter.

34. After having received notice of the Asserted Patents, Reco has continued to make, use, sell, offer for sale, and import into the United States the Accused Products. Reco's making, using, selling, offering to sell and importing of the Accused Products into the United States constitute direct infringement under 35 U.S.C. § 271(a).

35. After having received notice of the Asserted Patents, Reco has continued to advertise and distribute the Accused Products, offer technical assistance, and publish user guides, white papers, promotional literature or instructions to customers, partners, and/or end users, advising them to use the Accused Products in a manner that directly infringes the Asserted Patents. Reco's customers who purchase and operate the Accused Products in accordance with instructions provided by Reco directly infringe one or more claims of the Asserted Patents. Reco provides such instructions through, for example, its website and social media pages. For example, Reco provides information about the Accused Products and instructions for how to use the Accused

Products (including YouTube videos) on Reco's website. *See, e.g.*, https://www.reco.ai/posture-management; https://www.reco.ai/app-discovery-governance; https://www.reco.ai/data-exposure-management; https://www.reco.ai/shadow-app-discovery. On information and belief, by such acts, Reco has actively induced, and continues to actively induce, direct infringement of the Asserted Patents, in violation of 35 U.S.C. § 271(b).

36. After having received notice of the Asserted Patents, Reco has continued to make, use, sell, offer for sale, and import into the United States the Accused Products with knowledge that these Accused Products are a material part of inventions claimed by the Asserted Patents and are especially made or adapted for use in an infringement of the Asserted Patents. On information and belief, Reco knows that the Accused Products are not a staple article or commodity of commerce suitable for substantial non-infringing use. Reco's actions contribute to the direct infringement of the Asserted Patents by others, including Reco's customers, in violation of 35 U.S.C. § 271(c). Furthermore, such components are a material part of the invention and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

**COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 11,044,256**

37. AppOmni incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

38. AppOmni owns all right, title, and interest in the '256 Patent, including the right to sue and recover damages for infringement thereof.

39. In violation of 35 U.S.C. § 271, Reco has directly infringed, and continues to infringe, at least Claim 1 of the '256 Patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Accused Products. The Accused Products meet every element of at least Claim 1 literally or under the doctrine of equivalents.

40. **Exhibit D** is a preliminary and exemplary claim chart illustrating how each of the elements of Claim 1 of the '256 Patent are met by the Accused Products.

41. Reco also has indirectly infringed and continues to indirectly infringe the '256 Patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

42. At least as of December 16, 2024, Reco has knowledge of the '256 Patent and its infringement thereof.

43. On information and belief, Reco has been, and currently is, inducing infringement of the '256 Patent, in violation of 35 U.S.C. § 271(b), by knowingly encouraging or aiding others to make, use, sell, or offer to sell the Accused Products in the United States, or to import the Accused Products into the United States, without license or authority from AppOmni, with knowledge of or willful blindness to the fact that Reco's actions will induce others, including but not limited to its customers, partners, and/or end users, to directly infringe the '256 patent. Reco induces others to infringe the '256 Patent by encouraging and facilitating others to perform actions that Reco knows to be acts of infringement of the '256 Patent with specific intent that those performing the acts infringe the '256 Patent.

44. On information and belief, Reco's customers directly infringe the '256 Patent. On information and belief, Reco specifically intends for customers to infringe the '256 Patent. Reco encourages infringement by customers at least by providing instructions on its website that instruct users on how to use the Accused Products.

45. On information and belief, Reco has been, and currently is, contributorily infringing the '256 Patent, in violation of 35 U.S.C. § 271(c), by selling or offering for sale, in this judicial district and throughout the United States, components that embody a material part of the inventions

described in the '256 Patent, are known by Reco to be especially made or especially adapted for use in infringement of the '256 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the Accused Products. Reco's actions contribute to the direct infringement of the Asserted Patents by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

46. Reco's infringement has damaged and will continue to damage AppOmni, which is entitled to recover the damages resulting from Reco's wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

47. AppOmni has complied with the requirements of 35 U.S.C. § 287(a) at least because AppOmni provided Reco with actual notice of its infringement.

48. Reco's infringement has caused, and will continue to cause, irreparable harm to AppOmni, for which damages are an inadequate remedy, unless Reco, including its corporate affiliates and subsidiaries, is enjoined from any and all activities that would infringe the claims of the '256 Patent.

49. On information and belief, Reco's infringement of the '256 Patent has been and continues to be deliberate and willful. Reco has continued to sell and offer for sale the Accused products knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Reco. Despite this risk, Reco has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for AppOmni's patent rights. Thus, this is an exceptional case warranting an award of treble damages and attorney's fees to AppOmni pursuant to 35 U.S.C. §§ 284-285.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,870,783

50. AppOmni incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

51. AppOmni owns all right, title, and interest in the '783 Patent, including the right to sue and recover damages for infringement thereof.

52. In violation of 35 U.S.C. § 271, Reco has directly infringed, and continues to infringe, at least Claim 1 of the '783 Patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Accused Products. The Accused Products meet every element of at least Claim 1 literally or under the doctrine of equivalents.

53. **Exhibit E** is a preliminary and exemplary claim chart illustrating how each of the elements of Claim 1 are met by the Accused Products.

54. Reco also has indirectly infringed and continues to indirectly infringe the '783 Patent by inducing infringement pursuant to 35 U.S.C. §271(b) and/or contributing to infringement pursuant to 35 U.S.C. §271(c).

55. At least as of December 16, 2024, Reco has knowledge of the '783 Patent and its infringement thereof.

56. On information and belief, Reco has been, and currently is, inducing infringement of the '783 Patent, in violation of 35 U.S.C. § 271(b), by knowingly encouraging or aiding others to make, use, sell, or offer to sell the Accused Products in the United States, or to import the Accused Products into the United States, without license or authority from AppOmni, with knowledge of or willful blindness to the fact that Reco's actions will induce others, including but not limited to its customers, partners, and/or end users, to directly infringe the '783 patent. Reco induces others to infringe the '783 Patent by encouraging and facilitating others to perform actions that Reco knows to be acts of infringement of the '783 Patent with specific intent that those performing the acts infringe the '783 Patent.

57. On information and belief, Reco's customers directly infringe the '783 Patent. On information and belief, Reco specifically intends for customers to infringe the '783 Patent. Reco encourages infringement by customers at least by providing instructions on its website that instruct users on how to use the Accused Products.

58. On information and belief, Reco has been, and currently is, contributorily infringing the '783 Patent, in violation of 35 U.S.C. § 271(c), by selling or offering for sale, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the '783 Patent, are known by Reco to be especially made or especially adapted for use in infringement of the '783 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the Accused Products. Reco's actions contribute to the direct infringement of the Asserted Patents by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

59. Reco's infringement has damaged and will continue to damage AppOmni, which is entitled to recover the damages resulting from Reco's wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

60. AppOmni has complied with the requirements of 35 U.S.C. § 287(a) at least because AppOmni provided Reco with actual notice of its infringement.

61. Reco's infringement has caused, and will continue to cause, irreparable harm to AppOmni, for which damages are an inadequate remedy, unless Reco, including its corporate affiliates and subsidiaries, is enjoined from any and all activities that would infringe the claims of the '783 Patent.

62. On information and belief, Reco's infringement of the '783 Patent has been and continues to be deliberate and willful. Reco has continued to sell and offer for sale the Accused

products knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Reco. Despite this risk, Reco has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for AppOmni's patent rights. Thus, this is an exceptional case warranting an award of treble damages and attorney's fees to AppOmni pursuant to 35 U.S.C. §§ 284-285.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,418,393

63. AppOmni incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

64. AppOmni owns all right, title, and interest in the '393 Patent, including the right to sue and recover damages for infringement thereof.

65. In violation of 35 U.S.C. § 271, Reco has directly infringed, and continues to infringe, at least Claim 1 of the '393 Patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Accused Products. The Accused Products meet every element of at least Claim 1 literally or under the doctrine of equivalents.

66. **Exhibit F** is a preliminary and exemplary claim chart illustrating how each of the elements of Claim 1 are met by the Accused Products.

67. Reco also has indirectly infringed and continues to indirectly infringe the '393 Patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

68. At least as of December 16, 2024, Reco has knowledge of the '393 Patent and its infringement thereof.

69. On information and belief, Reco has been, and currently is, inducing infringement of the '393 Patent, in violation of 35 U.S.C. § 271(b), by knowingly encouraging or aiding others to make, use, sell, or offer to sell the Accused Products in the United States, or to import the

Accused Products into the United States, without license or authority from AppOmni, with knowledge of or willful blindness to the fact that Reco's actions will induce others, including but not limited to its customers, partners, and/or end users, to directly infringe the '393 patent. Reco induces others to infringe the '393 Patent by encouraging and facilitating others to perform actions that Reco knows to be acts of infringement of the '393 Patent with specific intent that those performing the acts infringe the '393 Patent.

70. On information and belief, Reco's customers directly infringe the '393 Patent. On information and belief, Reco specifically intends for customers to infringe the '393 Patent. Reco encourages infringement by customers at least by providing instructions on its website that instruct users on how to use the Accused Products.

71. On information and belief, Reco has been, and currently is, contributorily infringing the '393 Patent, in violation of 35 U.S.C. § 271(c), by selling or offering for sale, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the '393 Patent, are known by Reco to be especially made or especially adapted for use in infringement of the '393 Patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the Accused Products. Reco's actions contribute to the direct infringement of the Asserted Patents by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

72. Reco's infringement has damaged and will continue to damage AppOmni, which is entitled to recover the damages resulting from Reco's wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

73. AppOmni has complied with the requirements of 35 U.S.C. § 287(a) at least because AppOmni provided Reco with actual notice of its infringement.

74. Reco's infringement has caused, and will continue to cause, irreparable harm to AppOmni, for which damages are an inadequate remedy, unless Reco, including its corporate affiliates and subsidiaries, is enjoined from any and all activities that would infringe the claims of the '393 Patent.

75. On information and belief, Reco's infringement of the '393 Patent has been and continues to be deliberate and willful. Reco has continued to sell and offer for sale the Accused products knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Reco. Despite this risk, Reco has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for AppOmni's patent rights. Thus, this is an exceptional case warranting an award of treble damages and attorney's fees to AppOmni pursuant to 35 U.S.C. §§ 284-285.

## **PRAYER FOR RELIEF**

WHEREFORE, AppOmni respectfully requests that the Court enter the following relief in its favor and against Reco:

1. A judgment that Reco has infringed and is infringing, directly and indirectly, one or more claims of each of the Asserted Patents literally or under the doctrine of equivalents;

2. An order enjoining Reco and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting on behalf of or in active concert or participation therewith, from further infringement of the Asserted Patents;

3. An award of damages sufficient to compensate AppOmni for Reco's infringement under 35 U.S.C. § 284;

4. An order awarding treble damages for willful infringement by Reco;

5. An award of supplemental damages, including interest, with an accounting, as needed;

6. A determination that this is an exceptional case under 35 U.S.C. § 285 and that AppOmni be awarded attorneys' fees and costs;

7. An award of costs and expenses in this action;

8. An award of prejudgment and post-judgment interest; and

9. An award of such other and further relief, including equitable relief, as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

AppOmni demands a jury trial for all issues deemed to be triable by a jury.

Dated:  April 4, 2025

OF COUNSEL:

Kevin P.B. Johnson (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Fl.
Redwood Shores, California 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com

Brian P. Biddinger (*pro hac vice* forthcoming)
Cary E. Adickman (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000
brianbiddinger@quinnemanuel.com
caryadickman@quinnemanuel.com

Jared Newton (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
jarednewton@quinnemanuel.com

 */s/ Michael A. Barlow*
Michael A. Barlow (#3928)
  QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com

*Attorneys for Plaintiff AppOmni, Inc.*